# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

ROGER L. STOLTZ,                                  :

                Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.        :

Case No. 3:07-cv-429

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a.

With respect to the present case, eligibility is dependent upon disability, income, and other financial

resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is

suffering from a medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes

performance of the claimant's former job or any other substantial gainful work which exists in the

national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or

alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the

claimant files an SSI application. *See,* 20 C.F.R. §416.335.

   The Commissioner has established a sequential evaluation process for disability

determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged

in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment

or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe

impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1

(1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is

found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's

impairments do not meet or equal a listed impairment, the Commissioner determines if the

impairments prevent the claimant from returning to his regular previous employment; if not, the

claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous

employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on April 16, 2004, alleging disability from October 1, 2002, due to asthma and migraine headaches. (Tr. 61-63, 65). Plaintiff's applications were denied initially and on reconsideration. (Tr. 44-54). Administrative Law Judge Melvin A. Padilla held a hearing, (Tr. 305-34), and determined that Plaintiff is not disabled. (Tr. 14-26). The Appeals Council denied Plaintiff's request for review. (Tr. 4-6).

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe obesity and pulmonary impairment (mild obstructive pulmonary disease and obstructive sleep apnea), (Tr. 18, ¶ 3), but that he does not have an impairment or combination of impairments that meet or equal the Listings. (Tr. 22  ¶ 4). Judge Padilla found further that Plaintiff has the residual functional capacity to perform a reduced range of medium work. (*Id.*, ¶ 5). Judge Padilla then used sections 203.06 through 203.09 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 25,  ¶¶ 9, 10 ). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. *(Id.* ¶ 11).

In his Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to his alleged mental impairments. (Doc. 11). Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged exertional impairments.

Plaintiff was diagnosed with obstructive sleep apnea in 1990  and began using a C-PAP machine after he underwent additional testing in March, 2001. (Tr. 247-48).

Dr. Fox has been Plaintiff's treating physician since September, 1973.  (Tr. 144-68).

Over time, Dr. Fox has treated Plaintiff for various general medical conditions. *Id.* Plaintiff first reported problems with headaches to Dr. Fox in about 1993. *Id.* Plaintiff reported an increase in his headaches in late 2000, and in early 2001, Plaintiff complained of problems with balance and dizziness. *Id.* On May 9, 2001, Dr. Fox noted that Plaintiff reported his headaches were coming more frequently and at a greater severity and that he was feeling depressed. *Id.*

An MRI of Plaintiff's head performed on March 2, 2001, revealed a small lacunar infarct in the left external capsule along with mild cerebral atrophy and mild small vessel disease. (Tr. 150).

Plaintiff has received treatment from Dr. Smith, a pulmonologist, since about 1992, primarily for asthma and sleep apnea. (Tr. 237-50). A September, 2002, pulmonary function study revealed a mild obstructive ventilatory defect and Dr. Smith concluded that Plaintiff's pulmonary function tests showed that Plaintiff was close to normal and that his symptoms were from congestion. *Id.* On July 8, 2003, Dr. Smith noted that Plaintiff complained of increased shortness of breath with exertion which was worse in hot weather, that Plaintiff had stopped using his C-PAP machine due to a machine malfunction, and that his lung fields were clear. *Id.* Dr. Smith also noted that Plaintiff's increased shortness of breath was not due to asthma and he recommended that Plaintiff return to using his C-PAP machine. *Id.* On April 13, 2004, Dr. Smith noted Plaintiff's condition was unchanged and that he did obtain a new mask for his C-PAP machine. *Id.* On February 2, 2005, Dr. Smith noted that Plaintiff had continued complaints of increased shortness of breath. *Id.* Dr. Smith also noted that Plaintiff's pulmonary function tests showed only minimal defects, that his problems resulted from not using his C-PAP machine, and that Plaintiff's main problem was an untreated sleep apnea with resultant cor pulmonale. *Id.*

On October 17, 2001, Plaintiff consulted with Dr. Stillman, a neurologist at the Cleveland Clinic, who reported that Plaintiff had difficulty with tandem gait, exhibited sensory symptoms without motor symptoms in the right median nerve distribution, but that the remainder of his neurological examination was negative. (Tr. 262-65). Dr. Stillman also reported that Plaintiff had a combination of cluster headaches and migraine headaches with aura and that it might be a trigeminal autonomic cephalgia. *Id.* Plaintiff continued to receive treatment from Dr. Stillman through at least August, 2005. (Tr. 251-63).

An MRI of Plaintiff's head performed on July 23, 2004, revealed stable mild diffuse cortical atrophy, mild chronic small vessel ischemic change in the white matter, a small lacunar infarct in the left external capsule (stable), stable deformity of the right globe as well as left globe, likely scleral banding, bilateral extraocular lens in the eyes, no retro-orbital or orbital pathology, and no acute intracranial hemorrhage or ischemia. (Tr. 190-91).

Plaintiff was hospitalized February 17-20, 2005, for treatment of asthma/chronic obstructive pulmonary disease exacerbation, upper respiratory tract infection, possible cor pulmonale, obstructive sleep apnea, and uncontrolled diabetes. (Tr. 219-25). Plaintiff was treated with medications and discharged. *Id.*

Plaintiff returned to Dr. Smith on March 3, 2005, following his hospitalization. (Tr. 239). Dr. Smith noted plaintiff's hospitalization resulted from classic symptoms of congestive heart failure and that he would "likely continue to be plagued by symptomatic congestive heart failure" as long he was not treating his sleep apnea effectively. *Id.* Dr. Smith again stressed to Plaintiff the importance of complying with treatment and he recommended that Plaintiff have his C-PAP titration adjusted and make sure he had a comfortable mask. *Id.*

Plaintiff began receiving treatment from Dr. Ahmed on March 8, 2005. (Tr. 267-74). Over time, Dr. Ahmed treated Plaintiff for headaches, eye disorder with cataract and glaucoma, hypertension, lung disease, arthritis in all joints, psoriasis, and eczema. *Id.* On March 23, 2005, Dr. Ahmed noted that Plaintiff had mild wheezing and that Plaintiff weighed 301 pounds at a height of 69 inches. *Id.* Dr. Ahmed recommended that Plaintiff start a low-carbohydrate-low-fat-diet and to exercise as tolerated. *Id.* Dr. Ahmed also started Plaintiff on Glucophage due to his impaired glucose tolerance. *Id.* On June 20, 2005, Dr. Ahmed noted that Plaintiff was not exercising but was trying to diet and that he had stopped taking the glucose medication because it made him feel weak. *Id.* Dr. Ahmed recommended Plaintiff try a 1,800 ADA diet and exercise as tolerated. *Id.*

Plaintiff underwent a functional capacity evaluation on October 17, 2005, at which time it was noted that Plaintiff was severely deconditioned and experienced shortness of breath with minimal activity, that his capacities placed him in the sedentary category of work, and that balancing problems with static standing were a concern. (Tr. 275-81). It was also noted that Plaintiff had decreased ranges of motion of his cervical spine and right and left shoulders, decreased discrepancy to light touch in his thumb and first 3 fingers of the right hand with numbness in the tips of the first 3 fingers, and that he was unable to squat, kneel, crawl, bend, bend, or stoop. *Id.*

On November 14, 2005, Plaintiff consulted with orthopedic surgeon Dr. Stover who reported that Plaintiff was in a motor vehicle accident on November 1, 2005, complained of pain in his left shoulder, and that he had complaints related to his neck. (Tr. 285-86). Dr. Stover also reported that Plaintiff's left shoulder revealed no obvious atrophy or abnormality, that he had left shoulder range of motion of zero to 160 degrees, that the clinical impressions were cervical degenerative disk disease, maybe some rotator cuff tendinitis, and numbness in his hands probably

due to carpal tunnel. *Id.* Dr. Stover recommended further testing and physical therapy. *Id.*

On March 28, 2006, Plaintiff underwent a limited palmar fasciectomy with release of the PIP joint of the right small finger secondary to Dupuytren's disease which Dr. Danis performed. (Tr. 287-89; *see also*, Tr. 301-04). Subsequently, Dr. Danis noted that Plaintiff's post-operative range of motion at the PIP joint was about 30-35/70. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting the results of the October, 2005, functional capacity evaluation and by failing to find that his headaches are a severe impairment that prevent him from working at any exertional level on a sustained basis. (Doc. 11).

Plaintiff argues first that the Commissioner should have accepted, and presumably adopted, the results of the October, 2005, functional capacity evaluation.

A social security disability claimant bears the ultimate burden of proof on the issue of disability. *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) (citation omitted); *see also, Moon v. Sullivan,* 923 F.2d 1175 (6th Cir. 1990).

In rejecting the conclusions of the October, 2005, functional capacity evaluation, Judge Padilla first noted that the report was completed by the physical therapist who performed the evaluation. (Tr. 23). A physical therapist is not recognized as an acceptable medical source. *Neirzwick v. Comm'r of Social Security,* No. 00-1575, 2001 WL 303522, *4 (6th Cir. Mar. 19, 2001), *citing, Walters,* 127 F.3d at 530-531; *see also,* 20 C.F.R. § 1513.

Judge Padilla went on to reject the conclusions in the October, 2005, report on additional grounds. For example, Judge Padilla noted that the evaluator determined that Plaintiff was not able to participate in a conditioning program because he was severely deconditioned. (Tr.

23). This is an accurate recitation of the inconsistent conclusion which the evaluator reported. (Tr. 275). In addition, Judge Padilla noted that while the evaluator determined that Plaintiff exhibited shortness of breath with minimal activity, the medical evidence did not support that conclusion. (Tr. 23). Judge Padilla pointed particularly to the minimal findings which Dr. Smith reported as well as the mild findings found on pulmonary function studies. *Id.* Further, Judge Padilla noted that the October, 2005, report refers to several of Plaintiff's subjective allegations such as balance problems, weakness, and postural abnormalities, which do not have any medical support in the record. *Id.* This Court agrees that it appears that the evaluator simply accepted several of Plaintiff's subjective complaints and allegations which have no medical support in the record. Finally, as Judge Padilla noted, no treating source, indeed, no acceptable medical source, has opined that Plaintiff is disabled nor even offered an opinion as to Plaintiff's residual functional capacity. (Tr. 24). Under these facts, the Commissioner did not err by rejecting the conclusions in the October, 2005, report as to Plaintiff's residual functional capacity.

Plaintiff argues next that the Commissioner erred by failing to find that his headaches are a severe impairment.[1]

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985)(citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

---

[1] In his Reply Plaintiff makes a somewhat unintelligible argument with respect to the Commissioner's memorandum. (Doc. 14 at 1). For example, Plaintiff cites the Defendant's argument that [Judge Padilla] properly weighed treating physician Saleh's opinion. However, the Commissioner never presented such an argument. Indeed, there in no "treating physician Saleh" involved in this matter.

An ALJ does not commit reversible error in finding a non-severe impairment where the ALJ determines that a claimant has at least one other severe impairment and then goes on with the remaining steps in the disability evaluation, since the ALJ considers all impairments, including non-severe impairments, in determining residual functional capacity to perform work activities. *See, Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir. 1987).

Judge Padilla found that Plaintiff's has severe impairments of obesity, mild obstruction pulmonary disease, and obstructive sleep apnea. Judge Padilla then proceeded with the remaining steps of the sequential evaluation process before reaching his conclusion as to Plaintiff's residual functional capacity and then determining that Plaintiff is not disabled. Therefore, the Commissioner did not commit reversible error by failing to find that Plaintiff's headaches are a severe impairment. *Maziarz, supra.*

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

November 24, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).